Verlinden, 25 years ago, a Supreme Court case, said that at the threshold of every action against a foreign sovereign, there must be an application of the detailed standards to determine whether or not jurisdiction applies. In this case, we have a complaint, this is on a facial attack, in which the Holy See contends the factual allegations supporting jurisdiction are not pled. That's the essence of the question here, whether or not, under the tort exception, there are sufficient facts to establish jurisdiction. Now, we've cited in the briefs, and I won't go through them in detail, a number of cases which make essentially the point that where a defendant raises a question of either the adequacy of allegations or answers and contests the allegations, the allegations in the complaint establishing jurisdiction must be detailed, they must be factual, they must be precise, and they must be affirmative. In this case, we have a particular circumstance which places in question whether any of the allegations relating to the Holy See can properly be attributed to it for purposes of jurisdiction. And the critical fact is, the plaintiffs plead here the existence of multiple distinct parties, that is to say, separate corporations. Those separate corporations, and if the complaint is scrutinized, one will see that the separate corporations are, in fact, the entities which are committing the acts which are complained of. Well, sometimes yes and sometimes no, as to the allegations. And also, there's a distinction, and it would be helpful if you addressed it, between the entities and the people who may be working for the entities but who are also alleged to have been appointed and responsible to the Holy See, like the bishops and the heads of the order and so on. So I'm not sure that the, sometimes they're working through those people as entities, as agents according to the complaint, but not necessarily through the entities. I think the question raised by that question is whether or not when, to draw an example from the parent subsidiary corporate context, once a subsidiary is created, if a director is placed in a subsidiary and can, takes actions while in that directorship, can those actions be imputed back to the parent? The very purpose of the corporate separation is to ensure, and this is, I'm thinking here of the Best Foods case, Justice Souter's Supreme Court case, makes exactly this point. Once the director is in the subsidiary corporation, the acts undertaken by the director of that subsidiary corporation are presumed to be the acts of that corporation, not the acts of the parent. And one can see why, because if that were not the case, one could always plead around separate corporations simply by indicating that a director of a And I think that's the risk there. It ends up unwinding an essential element of corporate separation. Can I ask you a question because it goes a little bit to this corporate separation, but maybe not exactly. They do plead directly. They say, the priest was an employee of the Holy See. They just plead that. My question to you is kind of a pleading question. Is it insufficient to plead, X is an employee of Y, or does somebody have to go on and say more? And if the answer is you've got to lay out a bunch of elements, you can't just plead employment. So I say, X was driving down the street and had an accident with me, and he was employed by Y on Y's business at the time. Do I have to plead more about the employment relationship, or can I just plead employee? Is my question clear? It's certainly a question I can work on. And if the answer is, yes, you have to plead employee, I'd like to decide. The answer is in part contextual and in part related to the nature of the case. If one were to, say, make a simply drawn complaint in which the context of the facts were that, I don't know, somebody was accosted by the city manager of the city of Portland, and the suit was against the city of Portland, and the context suggested that this was the city manager and it happened in the city building, I think you might not need to plead much more than the words themselves. If that suit were also against the state of California, or more, against the United States of America on the theory that somehow, because the city manager of Portland was also the employee of the state of Oregon and the United States, I think the court would begin to wonder whether or not you needed a little bit more than simply plead that the city manager of the city of Portland is the employee of the United States of America. It bothers me that I wonder about notice pleading all the time. One is always left in wonderment. But the question is, can one knock out a lawsuit because the person said, X is an employee of Y, and didn't say, and X controls Y, and X directs Y, and X pays his salary, and blah, blah, blah. Or can one just say, X is an employee of Y? It may not be true, and it may not pass the giggle test of one. And it may be that if somebody brought a jurisdictional attack based on affidavits and asked for a hearing, it wouldn't be true. But can I, am I knocked out because I plead employee? And if we say, well, that's just a legal conclusion, employee, and therefore we don't have to accept it as true. But if I have to accept it as true, then they plead it. The answer in this context is that employee effectively states a legal conclusion in the same way that if one were- But they also say under their direct supervision and control. This is precisely the reason that I think that the allegations have, all of the allegations have to be scrutinized and taken together. Because if one looks at the allegations in paragraph 3, paragraph 4, paragraph 5, 11, 12, 13, and 14, one sees it riddled with very specific allegations that the actions of the bishops on behalf of supposedly the Holy See are all by and through allegations. The priest is described as an order priest. There is absolutely no indication that this priest has ever had any relationship to the Holy See whatsoever. Well, there is. You're drawing on perhaps your knowledge of, you know, the actual structure as opposed to what's down here. There's an allegation that they had, that, for example, that the Holy See placed him in Oregon. Now, you may not, you may know that isn't to be so, and you could bring a jurisdictional factual challenge to that, but the allegation is there. The, I think what we're seeing here is exactly the problem faced in the Robinson, remember, yes, Robinson v. Government of Malaysia case, which is a Second Circuit case for an action for premises liability in which an embassy had purchased or rented a building. There was an accident in the building, and there was a lack of clarity as to what was the cause of the accident. There was a, essentially somebody fell on a substance placed on the floor. The question, what the court stated in that case was, because there's uncertainty as to who placed, there was a direct allegation that it was the Government of Malaysia, Malaysia who was responsible for creating the hazard. The court said, well, that's not enough. We've got multiple parties here. We've got to ascertain whether or not the jurisdictionally significant act is distinctly and affirmatively pled on the face of the complaint vis-a-vis the Government of Malaysia. And the court finds that it's not, and it finds that it's not because there's an ambiguity in the complaint as to who put the substance there. That's the same situation we have here. When you have explicit allegations that are by-and-through allegations and that the But this isn't a by-and-through. It's Defendant's Holy See and Defendant Order placed Ronan. It's not by-and-through. That does not appear to be by-and-through until one looks at another allegation that says elsewhere that says that the placement is done by-and-through orders. Where is that? Do you mean like paragraph 35, which says, Holy See, by-and-through, this agent's granted him? That's one example. There are several in which. But that's different, of course. I mean, obviously, the Holy See operates by-and-through its agents, some agents. But it didn't say that the agents were these entities. Well, those are the only entities named. If we don't, I think that the point here, and it's the point made in the Ariba case, if you have a set of general allegations about power, and you claim that that power is being exercised through other entities, which I think essentially has to be the case here, there's a one bare allegation of the Defendant Holy See and the order placing Ronan. Now I don't think one can, to therefore conclude on that basis, first of all, that that is which is what would be required under the tort exception. Are you going to address any of the other issues? I mean, assuming that we thought that there was some allegation here that dealt with what went directly through the Holy See, what else happens next? Yes. I mean, if we're to have to choose in the time remaining, I think I would probably choose the question of scope of employment and draw the Court's attention to the Moore case and the Federal Moore case and the Fearing case. The Fearing case, which is an Oregon Supreme Court case, clearly places the acts complained  Now, one is assuming that there are allegations sufficient to plead scope of employment under the FSIA and employment under the FSIA. But even if there are, the statute, and Moore follows the statute, explicitly holds that the statute requires that the act complained of, the tortious act, must be within the scope of employment. The applicable law here is the Fearing case, the state court case, which says that sexual abuse is explicitly outside the scope of employment. So I think that is a critical determination for the Court. It appears to me that when one places the language of the statute against the facts that are alleged in light of Fearing, that one cannot possibly conclude that sexual abuse is within the scope of employment under Oregon law. Counsel, frankly, I'm surprised that you brought that case up. Well, I bring it up because what Fearing holds, essentially, is that Fearing states a rule of liability, that if there are acts which are pledged to lead to a, in this case, a sexual misconduct, then that would be enough to impose liability. But that's a rule of liability. And a rule of liability is different from a rule of jurisdiction. To obey the rule of jurisdiction, one must look to the command of the statute, which is that the tortious act must occur within the scope of employment. Under Oregon law, the tortious act, this tortious act that is alleged, is by definition, under the understanding of the Supreme Court, outside the scope of employment. Unless there are other questions, I perhaps should leave five minutes now. Thank you very much. Thank you. Counsel. May it please the Court, my name is Marcy Hamilton, and I represent John Doe, who is the victim in this case of a worldwide hierarchical organization that essentially put its image and its resources ahead of those it was intended or purporting itself to serve. The case is really at this stage only about the adequacy of the complaint, and it's on a facial attack. The Holy See had many opportunities to provide affidavits to disprove the facts that we allege. They declined to do that. We asked for discovery. They declined to do that. So we're in a situation where the complaint must be taken as true. Is there, in fact, the suggestion is that there are some special pleading rule applicable here, as I understand it, because it's jurisdictional and perhaps because it's Foreign Sovereign Immunities Act. Is there such a rule? There's no. There's no special pleading rule. There is a requirement that some element of the FSIA is satisfied, but we've clearly satisfied. Level of detail is the question. I mean, it's sort of like, as I understand the argument, that it's kind of like none, that there's some special level of detail that's required. Well, there are none that we found in any of the case law, but not only that, this complaint does not stop at all at saying that Andrew Ronan was an employee. It has many facts involved in describing the organization within which he's alleged to be an employee and the way that it operates. So if you look at just the beginning of the complaint, if you look at the third paragraph, essentially what is laid out is that this is a hierarchical organization, that the Holy See itself appoints the leadership in both the orders and in the diocese. It determines the boundaries for the diocese and the orders. It has special offices within the Holy See that are involved in this. And most important, especially with respect to negligent retention, the Holy See has a responsibility for removal. You cannot remove a priest without the Holy See taking action itself. Where is that in the complaint? If you look at the bottom of three, Defendant Holy See is directly responsible for removing superiors, bishops, archbishops, cardinals of service, making them ineligible for positions of leadership. It doesn't say priest, though. It does not say priest, that's true. It says hierarchy, hierarchical members other than the priest. Yeah, but it skips out when it gets to priest. That's true. So apparently it does not have that authority for pleading over priests. Right, right. Well, but the question is, what is the standard for determining an employee to begin with? That's the question I was asking them that I'd like to ask you. Of course, you have to accept the pleadings as true, but only the well-pleaded facts, not conclusions of law. And is it sufficient to say, never mind this particular case for a moment, is it sufficient to say that X was an employee of Y, and now you're finished for pleading purposes. Let's say, take us to Fender Bender, and there's an accident. You say, X was an employee of Y. Is saying employee sufficient to plead employment, or do you have to plead other stuff? You have to plead other stuff, then we can start picking through whether enough was said here or not enough was said. But do you have to plead other stuff? I don't think so, Your Honor. Employment is a factual statement as well as a legal statement. In the context of a complaint, we're alleging facts. And one of them is that he was an employee of a variety of entities. Is there any case that says it's enough to say employee that you're aware of? That says it's enough? To say, X is an employee of Y, and you've passed. Not that I know of. But I also don't know of a case that says that referring to someone as an employee is insufficient. And I would think that thousands of complaints would be thrown out if you couldn't use that term as a fact. What about the other point he made with regard to the distinction between the entities as agents and the people as agents? For example, in paragraph 3, it says, the Holy See engages in these activities through its agents, cardinals, bishops, and clergy, including religious orders, priests. At other points, it refers to the bishop with a capital B, which I understand to be an entity, the order, and so on, as agents. So there's a distinction here. And can the cardinals, bishops, and clergy as people be agents who don't run into the sort of corporate failed problems? Oh, I think so. I mean, both the entities- What about the analogy he gave about the fact that if a parent appoints a can't be separated out? Well, I mean, we have the situation of whether or not the individual at the head of the corporation, so we'll characterize it like that, individual at the head of the corporation has acted within the authority that's given by the foreign sovereign or without that authority. We get to that kind of issue in the discretionary exception to the tort activity. And so that's a distinction that makes a difference there. But in terms of agency analysis, the question is whether or not there's a legal entity that can be an agent for the sovereign. And what this Court has said in the Fanuf case is that every sovereign has to have agents because it's- that's what a sovereign- a sovereign is just a fiction. It cannot do anything without agents. And in the case of this particular defendant, the Holy See, its agents are those over which it exerts control and over which there is such a terrific amount of interrelationship from top to bottom. And so the agents are all of them. People or entities? Both. Both. We're arguing that both the individuals and the entities are the agents. But what I'm asking is if we don't buy the entities, could we buy the people? Certainly. Certainly. I mean, agency theory, at least all the cases that we have, doesn't say that an individual can be an agent. And it certainly says- Well, of course individuals can be agents. But can individuals who have the authority they have because of their connection, or perhaps they don't, but with an entity which I'm hypothesizing now we would say was sufficiently separate for pancake and other purposes that we wouldn't recognize it as a basis for asserting jurisdiction over the Holy See, could we still recognize the people, like Mr. Bishop as opposed to Bishop of the Capricorn? Yes, Your Honor. That's one of the reasons that we have pled, contrary to what you heard earlier, we have pled defendant does. We have unnamed defendants for the reason that this kind of entity has so many agents that it was unlikely that we were going to name everyone that would be involved in the kind of worldwide activity we have here from Ireland to the United States. The problem is, though, if you plead, X is a priest who is employed by and under the direct supervision and control of the archdiocese. That's what you plead, let's say. And let's say X goes out and does big nodding, whatever that is, has an accident, I don't care what it is. So that's what he is. Now, it seems to me it's a bit of a jump to say, ergo, the bishop or archbishop is his employer. It's just like a bridge too far. So if what you're pleading is that he's employed by the archdiocese, then sure, when he commits a wrong, let's just say, let's not worry about what kind of wrong, a covered wrong. The archdiocese can be sued. But I don't see the jump that, therefore, the archbishop can be sued. Well, we've pled both. Defendants include two archdioceses and the archbishops, who are incorporated. But you say he's employed by the archdiocese. They are distinct. The archdiocese is distinct from the bishop. And that's why we pled them. You think he's employed by the bishop too? But they are. So you're pleading he's employed by umpteen people. He's employed by A, B, C, D, and E. And if I told you to give me the elements of employment, you would prove that each one of those is an employer under Oregon law. And that's what you're saying. Only because this is an unusual organization in the thoroughgoing quality of its top-down control and its hierarchical nature. So that's just saying we're going to pierce all the corporate veils. So that's sort of skipping over. We're going to pierce all corporate veils. We're going to pierce all corporate structures. Everything's going to be pierced. And everybody is going to be liable for everything everybody does. Right. That's a little different animal. I'm sort of asking you. No, I understand there's a difference between the individuals and the corporations. I know you seem to be smashing through it all when you get to here. You say he's employed by the archdiocese. And therefore, the Holy See is responsible. Well, the allegations have direct allegations with respect to the Holy See as well, which is that the Holy See- I'm forgetting that for a moment. OK. You're setting that aside for a moment. Let's set aside. I already asked you about the employed by the Holy See thing. Let's set that aside. And as to the things employment by the archdiocese, if that's what it turns out to be, how does one pierce through the Holy See because he's employed by the archdiocese? Well, because the question of the relationship is determined by agency law and whether or not the Holy See has the power and the right to control, the power to hire, the power to fire, and the power to determine the scope of the authority. And those are all descriptive of the Holy See's activities as an employer in this organization. Well, you're just saying then, what you want to say is the Holy See employs every priest and every nun and everybody in the whole world that is a Roman Catholic- Clergy. Clergy, right? Yeah, absolutely. Or maybe not even quite clergy, but- Right. All of them, including nuns as clergy, all of them vow obedience and allegiance to the Holy See. And to- Well, Roman Catholic laity also vows something like that. Maybe not quite valid, but- I don't think we're going to have much argument on agency there. But if I had to, if I knew that we had individuals that were permitting the abuse of children, I might be up here making that argument. But those aren't our defenders. That's what I was concerned about, that you might be. Yeah, no, we're not there. No, we're not there. No, I mean, I thought you, it seems to me your theory is wide enough to incorporate that. Only if you can show the elements of agency, which would be the right to control, which I think would be harder with respect to the citizens or the parishioners. The problem we're solving for the moment. The other two large questions have to do with the exceptions. Right. To the FSIA, the torts exception, and the commercial exception. And I guess it would be helpful to me if you could address two questions in the time available. Okay. One is to answer the point that was made by your opponent with regard to the tort claim. Because I have somewhat, I have some issues there also. I mean, the statute does say scope of employment. It may be that our cases, I've read that to mean respondeat superior generally. But that's the question. How does that dovetail with our argument? The second question, with regard to the commercial exception, is really, I thought what the district court did with it was very imaginative. But he essentially said it meets every standard, but it can't be. And one does have that reaction. So my question is, I mean, this seems private, but not commercial in any ordinary use of the language. And what should we do with that? Well, I mean, it was our view from the beginning that the opinion was right on the analysis of commercial exception, but wrong on the assumption at the start that somehow there's some reason that you can't apply these principles to this entity because it is a church. This entity is a sovereign. It does not have any constitutional rights. No sovereign does. It is just a sovereign. All right. But what is, I was thinking about this. Would you say that what Ronan did, that his abuse was commercial? What Ronan did is not the essence of the complaint. It's not the, he didn't even plead him as a defendant. The essence of the complaint is... But you wouldn't say that, right? Because you'd say, well, it's private, but it's not commercial. It's, right. I mean, many acts are private and commercial. And here what we have is an organization that has made from the top down clear decisions to hide the identities of predators and to place them seriatim. Now, that decision is a commercial decision. It is protecting image and it is protecting wealth. It is protecting income stream, which is one of the requirements for every clergy in the church. And so the notion that because it is a church, that it is not engaging in commercial activity, it just, it doesn't follow. Of course, it's engaging in commercial activity. The question in this case is whether this activity was commercial. And our argument is that, yes, profit motive is not required to prove the nature of the act, but profit motive certainly can tell you the nature of the act to some extent. And here it's clear there's no other explanation for hiding a predator who has admitted he abused children in Ireland, baffled in Chicago. They would even put him near children and then sent again to Portland. It makes no sense that they would do that just to do it. Why would you say there's no other reason for doing it? That's a little bit overreaching, isn't it? Well, plenty of reasons. The person might have made, might have done something wrong in the past. It is a part of a lot of religions that people can reform and that people can be talked to. And they say, you know, now I really do understand that God doesn't want me to do things like that. And I will never do it again. Now, to say that not brooding or putting out to the whole world that this person committed a wrong black is not necessarily a commercial point of view. It could simply be humanitarian, religious, seal of the confessional, all those kinds of things, point of view. Of course we'd be on the complaint, but you've made the broad statement that this could- No, you said that this could only be commercial. I was based on the complaint. The complaint says that the clergy are in the position of us curating on screen, and that that's one of the motivations for making sure that no one in the public would know- I was addressing you when you said that is the only motivation. That's the only reason you would not make this known to the public. I think that's one too far. Well, I think image and financial are extraordinarily important. But is that- is any of this critical to your understanding of commercial? And then I would like you to go to the twerk question. But- and to a second twerk question too. But wouldn't you have to say on Judge Fernandez's hypothetical it's still commercial in the sense that they were still hiring- they were still doing something that only a private party can do, not a state. Whatever- it may be a religion, but it's not a state. And they were hiring people to do activities that had- that were commercial in the sense that whatever their motives were, were not- at least not in any way in the international or national scheme. They were providing education and counseling and so on. And they were hiring- so it was like hiring a chauffeur. I mean, it wasn't- whatever your motive was in hiring the chauffeur wouldn't matter, would it? Well, I mean, the doctrine says that the motive, if it's unrelated to commercial activities, is irrelevant. What's relevant is the nature of the act and employing, hiring, and acquiring, and placing individuals within a large organization is what- that's what private actors do all the time. The only reason they get the benefit of sovereign immunity there is if they're engaging in an act that only sovereigns do. And it can't possibly be said that sovereigns only engage in employment. I should say that I'll give you about four minutes extra and I'll give the other side some extra time too because I'd really like to hear about this. All right, so let's go to the twerk exception. Two questions. One is the one I asked, which is what about the scope of employment. The second is what about the discretionary exception, at least with regard to the hiring issues. It seems to me you've pretty much talked yourself into the discretionary exception by going into all the reasons they could be doing this. Well, the discretionary exception has these two elements, right? And frankly, Judge Mossman was right that we did not plead the first one, whether or not this was a discretionary decision. We pled the second one, which is even if the challenge, this is from the other, even if the challenge of action involves discretion, the court was determined whether the judgment is of the con that the discretionary exception was designed to shield. But most of the cases say that hiring decisions are exactly that, hiring and firing decisions. But the locus and the heart of the complaint is not just the hiring, it's the movement of a known creditor across international lines and then across state lines, even after the individual has admitted he did it and he can't reform it and it's going to be welcomed to do again, he's bound to rise in Chicago. Those are all facts that go to, I can't imagine writing a sentence saying that the discretion that was intended to be shielded by the FSIA is discretion to hide the identity of the child, right? That just can't be. But that's inherent in the whole discretionary exception concept and in the Federal Tort Claims Act as well. I mean, we often gulp and say, well, how can you have discretion to create a completely unsafe situation? You know, discretion to decide that the airplane should have less fuel because it's cheaper. But that's inherent in the scheme. But the discretion is inherent, but the second part of the case law, it's very clear. And then this exception, the exception goes through the cases. They will not permit the FSIA to be used as a way of shielding behavior that is not a legitimate form of policy making or whatever. One of the, if you look at the history, the primary reason for FSIA going from complete sovereign immunity to permitting sovereign immunity to be blocked, the whole reason was, quote, unquote, the interest of justice. And it can't be that the interest of justice is served by this kind of behavior and policy. Briefly, the other point. What about the scope of employment issue? The scope. It's probably not true in any other state. This is supposed to be determined by state law. But in Oregon, scope of employment is determined according to acts that started as obvious scope of employment in other states, but then lead to other actions. And here, you don't even have to get into the abuse, the moment of the attack. All that happens to create the moment of the attack, the ruling, to get the family to trust him, the time spent. All of that together, under Oregon law, means that he was engaging in the scope of his employment. He was counseling, he was teaching, all the things that he was supposed to be doing. But there's something weird about the fact that the word scope of employment is used in the federal statute. One would think that it had a federal definition. I understand that the tort doesn't have a federal definition, and it goes to Oregon law. But you'd think the concept, and I think our caseload may be the contrary, and that may be the answer. But you would think that scope of employment is not a malleable concept as far as the statute is concerned. The question is whether or not federal statute is incorporating the scope of employment, which is traditionally a state law. But if Oregon decides to call an apple an orange, is it incorporating that? With respect to Agent Orange? In other words, if the statute says all apples, and Oregon says an apple is an orange, or an orange is an apple, does now an orange become an apple for purposes of federal law? Well, the question there is are we in an agreement of express preemption, and state law does not control a tort or a crime that can only be controlled by state standards. The definition of the tort, yes. But there is a phrase in the statute, the federal statute, which is scope of employment is a term of art in this arena in every state. It's hard to believe that Congress would have assigned a different meaning to a term that is so settled in every state. They're essentially saying that scope of employment there really meant respondeat superior or whatever its elements are.       In some states, you're going to have more troubles in these arenas. But in this state, given Booker, all of the grooming activities and the trust activities get included as scope of employment. Thank you very much. And we'll give you a couple extra minutes as well. If I may make just a few points in response. First, to repeat, the statute does require that a tortious act be within the scope of employment. Second, I think that there is a difference between saying X is an employee E of Y and saying A, B, C, and D employ Y. The court is faced, I think, with a question here of whether to take seriously what is pled and is on the face of the complaint that there are separate juridic persons in this complaint. And that creates an inherent ambiguity combined with the by and through allegation. When you've got a complaint that says everybody's an employee, everybody's an agent, and everybody's a counselor. Wouldn't it have made a lot more sense to simply come forward with a bunch of facts and let's deal with the facts instead of it's always disturbing to be fighting about the scope of a complaint. It's a piece of paper and it's not worth anybody's time a whole lot. The problem here is that when you're dealing with the situation where a foreign sovereign or domestic sovereign is being stripped of immunity at the moment that you go past the pleading stage, you have to look seriously. And I'll cite two cases, the Fifth Circuit's Ariba case and the Ninth Circuit's Alpha Therapeutic case, in which both those courts say you've got to have specific facts which support the allegations of jurisdiction. Now, the appellee mentioned Fanouf. Fanouf is an important case to look at, precisely in the fearing context, I think, because in that case you had an authorized representative of a foreign state who engaged in acts and was styled an agent of that foreign state, but engaged in acts that were beyond the scope of the agency. And therefore, and that's a Ninth Circuit case, the court said, this court said, those acts which are beyond the scope of the agency shall not be considered acts committed by that foreign state. So the court looked very carefully to see whether or not the, although the agent was an authorized agent for certain purposes, once you have an authorized agent, you've also got to look to the scope. If the scope is beyond, if the activity is beyond the scope, it is not an act by the foreign state. The other point to make in response to the appellee is to cite the Lawrence case. That's an FTCA, Ninth Circuit case. That's basically a failure to warn case in which a person who was let out on probation was permitted to become a foster parent, and thereafter molested a child. Counsel, don't even waste your time with that. What's that? Don't waste your time with that one. This is a failure to warn? No, I simply, what I simply wanted to say was notwithstanding the fact that information was not disclosed, and as a result, the, a child was molested under the discretionary function exception, the government did not have to respond. The case was dismissed. Do you want to address in a minute the commercial exception? Well, it's a funny business because, in fact, if you look at the question of whether this was the act of a state, it'd say it isn't. If you wanted to look at the, if you want to use the word commercial, you'd say, well, maybe it isn't that either, or maybe it is. Bidoof says that there is no public act requirement. That is to say, we're, it's certainly not incumbent upon the foreign state to determine that the act is public. The question is whether or not it's commercial. The problem in this case. Actually, my understanding is the case was somewhat otherwise. In general, it seems to be focusing on whether a private person can do it. I think that's correct. But there isn't a separate requirement determining whether or not the act is public. The question more focuses on whether a commercial actor or private actor could do it. I think the problem with plaintiff's theory or allegations, aside from being speculative, I think the problem with them is that essentially by redefining the entire enterprise of the foreign state as somehow inherently commercial. So that the purpose of everybody asking is to collect. I mean, this is a completely unique sovereign because most of what it does, it doesn't do in its own country. It does elsewhere. And most of what it does is not state-like. It's more like what private entities do, i.e., private religions or charities. So, or nonprofits. I mean, I don't know that the whole profit motive thing seems to me to be wrongheaded. The question is, what if it was the Red Cross? I'm unclear as to why the Court says what it does, it does elsewhere. Because that's... It's in the... Let's suppose you had a little sovereign entity in the middle of Italy that ran the international Red Cross in all the other countries in the world. Right? If the Red Cross of the United States did something, and let's leave aside all the agency problems, would that be within the commercial exception or not? I mean, if they're separate... No, I'm leaving aside the corporations. I want to know whether being the Red Cross in the United States is commercial. No, I think it may involve commercial activity so that, for example, if the local archdiocese, which is a separate corporation, goes out and buys things, provisions for a church, or re-roofs a church, or builds a new... Those are all commercial activities. I think... What if they run a school or run a counseling center? Run a school, maybe a commercial activity. What if they run a church and people come in and go to church? I think that's a different sort of activity. There's something inherently different, I would say, from going out in the market and purchasing provisions for something and inviting members of a religious community in to pray and possibly give a donation. To convert that act, which is what's complained of here, into a commercial activity and to say that, essentially, all of these entities are all one, as plaintiffs say in their complaint, plaintiffs say, appellants. There are no appellants here. There's one appellant. There's a separate entity. It's the Holy See. Thank you very much, Cancel. I appreciate the arguments of both counsel on this very interesting case. The case of Doe v. Holy See is submitted, and we will go on to the last case of the day, which is United States of America.
judges: Fernandez, Berzon, Wright